# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                       Case No. 09-CR-103

**KENNETH KRUEGER**
        **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Kenneth Krueger with six counts of production of child pornography, contrary to 18 U.S.C. § 2251(a), and one count of possession of child pornography, contrary to 18 U.S.C. § 2252(a)(4)(B). Defendant pleaded guilty to two production counts (counts four and six) pursuant to an agreement with the government. I ordered a pre-sentence report ("PSR") and set the case for sentencing.

**I.**

The PSR set a base offense level of 32 on count four, U.S.S.G. § 2G2.1(a), with a 4 level enhancement because the offense involved a minor who had not attained the age of twelve, § 2G2.1(b)(1)(A), and a 2 level enhancement because defendant was the parent of the minor involved, § 2G2.1(b)(5), for an adjusted level of 38. On count six, the PSR set a base level of 32, with a 4 level enhancement because the offense involved a minor who had not attained the age of twelve, § 2G2.1(b)(1)(A), a 2 level enhancement because the offense involved the commission of a sexual act, § 2G2.1(b)(2)(A), and a 2 level enhancement because defendant was the parent of the minor involved, § 2G2.1(b)(5), for an adjusted level of 40. Grouping of offenses covered by § 2G2.1 is specifically prohibited, § 3D1.2(d), so the PSR

applied the multi-count adjustment of § 3D1.4, which resulted in a 2 level increase. The PSR then subtracted 3 levels for acceptance of responsibility, § 3E1.1, producing a final level of 39. Coupled with defendant's criminal history category of I, level 39 produced an imprisonment range of 262-327 months. I found these calculations correct and adopted them without objection. I also adopted the PSR's factual statements at the court's findings of fact.

## II.

In imposing the sentence, I considered the factors in 18 U.S.C. § 3553(a):

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range, set forth above;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, and the arguments of counsel, I found a sentence of 216 months sufficient but not greater than necessary to satisfy the purposes of sentencing in § 3553(a)(2). This memorandum sets forth the reasons.

## III.

### A.

On December 31, 2008, the Milwaukee FBI office received information regarding images of two minor girls that had been sent to the National Center for Missing and Exploited Children ("NCMEC") as part of another child pornography investigation. The images were traced to the Milwaukee area based on a first and last name appearing in two of the images. A search located a child with this name attending a school in this district. A school liaison officer identified a girl who appeared to be the child in the series provided by the NCMEC. On March 18, 2009, a Milwaukee police officer interviewed the child at her school, and she identified the photos as being taken of her. She also identified the defendant, her father, as the person who took the pictures. Law enforcement then went to defendant's residence, and obtained his consent to remove and examine his computers and other equipment.

I do not in this decision describe the specifics of defendant's conduct: count four was described in ¶ 20 of the PSR, and count six in ¶¶ 21-22. It is sufficient to say that defendant abused his own children to create this material. Regarding the image in count four, created in 2008, one of the girls was age eleven or twelve and the other four to five. Regarding the video in count six, created some time in late 2006, the girl was less than three. The government in its brief described additional images.

### B.

Defendant Krueger was forty-eight years old at the time of sentencing, with no prior criminal record. The record offered little insight into why he committed these crimes. He described a good childhood, and his family remained supportive. His sister indicated that the

3

family was shocked when this all came to light. In the letters and other materials submitted by the defense, defendant was described as a hard working, family oriented person, who volunteered at his children's school and in their other activities. He also presented various certificates he earned while detained in this case.

Defendant served in the army from 1979 to 1981, then spent three years in the reserves. He compiled a good work record thereafter – thirteen years as a set up and process engineer at a plastics company, ten years doing injection molding, and one year as a shift supervisor at another plastics company. He earned a GED after dropping out of high school to join the army and completed some further education, as discussed in the PSR. The report noted no history of mental illness or mental health counseling, but defendant admitted a past problem with marijuana use. After discovering his conduct, defendant's wife filed for divorce, and he had not seen his children since his arrest in this case.

**C.**

The guidelines called for a term of 262-327 months in prison, and the statutes of conviction carried a sentencing range of 15 to 30 years. The government recommended a sentence within the guideline range, while defendant advocated concurrent 15 year terms.

A substantial prison term was necessary in this case based on the very serious nature of the crimes. This court hears a fair number of child pornography possession and distribution cases, but very few production cases. The circumstances of this case were all the more serious because defendant abused his own daughters to produce this material, and did so over a significant period of time.

It was difficult to gauge the degree to which the public had to be protected from this defendant. As indicated, it was hard to gain insight into what was behind his conduct, or

4

whether with treatment offered through the Bureau of Prisons ("BOP") or in the community defendant would present a reduced risk of re-offending. He had never served time in custody before, and one would hope that any prison term within the statutory range would be sufficient to deter him and impress upon him that he cannot ever again engage in this conduct. Based on his letter to the court and his allocation, he seemed to demonstrate genuine, sincere remorse for his actions.

Regarding the guidelines' recommendation, I have written in other cases about the flaws in U.S.S.G. § 2G2.2, the guideline applicable to child pornography possession, receipt and distribution. See, e.g., United States v. Phinney, 599 F. Supp. 2d 1037 (E.D. Wis. 2009); United States v. Hanson, 561 F. Supp. 2d 1004 (E.D. Wis. 2008). Because this was a production case, some of those criticisms were inapplicable. However, the production guideline, § 2G2.1, does suffer from at least some of the same flaws as § 2G2.2, as the court recently discussed in United States v. Jacob, 631 F. Supp. 2d 1099, 1114-15 (N.D. Iowa 2009).

First, as the Seventh Circuit has acknowledged, § 2G2.1 is not fully the product of Commission study or expertise; rather, Congress has, much like in the area of drug trafficking, significantly changed sentencing policy in this area, primarily through minimum penalty increases. See United States v. Huffstatler, 571 F.3d 620, 623 (7th Cir. 2009) (citing U.S. Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 72-73 (Nov. 2004)). A court may afford less respect to a guideline that does not reflect the Commission's exercise of its characteristic institutional role. See Kimbrough v. United States, 128 S. Ct. 558, 563 (2007). In October 2009, the Commission produced a detailed report discussing the history of the child pornography guidelines, which mainly dealt with § 2G2.2 but also touched

5

on § 2G2.1.  U.S. Sentencing Commission, The History of the Child Pornography Guidelines (Oct. 2009), available at http://www.ussc.gov.  The Commission indicates that it has studied the issue, but there can be no doubt that Congress has significantly interfered with its efforts in this area.  I reviewed the Commission's report and the materials associated with Amendments 324 and 664, which most significantly impact the range under § 2G2.1, in imposing the instant sentence.

Second, § 2G2.1 contains some of the same specific enhancements as § 2G2.2, which can skew sentences upward.  Both guidelines contain significant enhancements for factors, such as images of pre-pubescent minors, present in most cases.  See Jacob, 631 F. Supp. 2d at 1115.  In the present case, the 4 level enhancement for a child under twelve raised the range, at the low end, from 168 to 262 months.  The Commission indicates in its recent report that in dealing with increases in the mandatory minimum adopted by Congress, it chose to set the base level below the minimum, then rely on enhancements present in most cases to exceed the minimum.  U.S. Sentencing Commission, The History of the Child Pornography Guidelines 45-46.  That may be a sensible choice given the circumstances the Commission had to address, but the 4 level enhancement for age of the victim, in this case, resulted in an increase far above what was needed to reach the mandatory minimum.  As defendant noted, the guideline range in this case exceeded that for a defendant who pleaded guilty to second degree murder.

Despite these flaws, I did not reject the guideline in any categorical fashion.  This case did not present the same type of situation I often see in § 2G2.2 cases, where enhancements present in most cases create a range approaching or exceeding the statutory maximum.  See Hanson, 561 F. Supp. 2d at 1010-11.  Section 2G2.1 also contains enhancements for

commission of a sexual act, § 2G2.1(b)(2), and the defendant as parent of the victim, § 2G2.1(b)(5), both of which applied in this case. These factors may not be present in most cases and seem a sensible way of recognizing more serious offenses.

In dealing with guidelines that are not fully reflective of Commission study and expertise, the court may elect to also consider the statutory range, starting with the mandatory minimum and considering any appropriate aggravating circumstances in the particular case, some of which may be listed in the guideline. See, e.g., Jacob, 631 F. Supp. 2d at 1115; United States v. Wachowiak, 412 F. Supp. 2d 958, 964 (E.D. Wis. 2006), aff'd, 496 F.3d 744 (7th Cir. 2007). I engaged in such an analysis in this case.

Nothing in defendant's character and background suggested that more than the mandatory minimum was needed. He had no prior record, a solid work history and strong family support. The submission from defense counsel undoubtedly depicted a person with many positive qualities. At age forty-eight, he would be in his sixties when released from any sentence within the statutory range. He pleaded guilty and expressed what seemed to be genuine remorse. It was also true, as defendant noted, that there was no attempt to profit financially from this conduct.

Defendant argued that a life term of supervised release would sufficiently protect the public. However, as indicated above, I had no indication about what sex offender treatment would accomplish in this case. Some of the other available conditions of supervision defendant mentioned (e.g, computer restrictions, searches of his person and property by the probation officer), as well as the Sex Offender Registration and Notification Act ("SORNA"), might possibly assist in protection of the public, but again that was speculative. He also mentioned civil commitment, but I had no idea whether that was in the cards. I accepted, as defendant

7

noted, that the BOP treatment plan at Butner is essentially a pre-release program, and that generally the longer the sentence the longer the delay in its commencement. In any event, Congress has indicated that imprisoning people for purposes of treatment is inappropriate. See 28 U.S.C. § 994(k).

Where defendant's proposal failed was in addressing the need to provide just punishment. There were two clearly aggravating factors – defendant abused his own children, over a period of time, and he committed a sex act – which required a sentence above the minimum. Defendant's suggestion of a sentence at the very bottom of the statutory range failed to adequately address these factors, and thus did not provide just punishment given the specific nature of the offense. It was also important, as the government noted, that the sentence be sufficient to deter others and promote respect for the law.

Considering all these factors, I found a sentence of 216 months sufficient but not greater than necessary. This sentence provided sufficient punishment, deterrence and protection of the public. Defendant had treatment needs, including mental health and substance abuse, but they had to be addressed initially by the BOP and later as conditions of supervised release. This sentence varied from the guideline range by less than 2 levels, and because it was based on the specific factors discussed herein, it created no unwarranted disparity.

**IV.**

Therefore, I committed defendant to the custody of the Bureau of Prisons for 216 months on counts four and six to run concurrently. Upon release, I ordered him to serve a supervised release term of 10 years. The guidelines recommend life in these types of cases, U.S.S.G. § 5D1.2(b), but given defendant's age and the length of the prison sentence, that was not necessary. As conditions, I ordered defendant to participate in a program of testing and

8

residential or outpatient treatment for drug and alcohol abuse; to avoid contact with any person under the age of eighteen without adult supervision or approval by his supervising probation officer; not to possess or use any computer without providing prior notice to the supervising probation officer; to consent to the supervising probation officer conducting periodic unannounced examinations of his computer equipment; to provide the supervising probation officer with all of his computer pseudonyms, passwords and logons; not to possess or use any data encryption or data erasure technique or program; to consent to third-party disclosure to any employer or potential employer concerning any computer-related restrictions; to participate in a program of sex offender mental health assessment and treatment; not to possess any sexually explicit material nor enter any establishment where such material can be obtained or viewed; to register with state and local authorities as a convicted sex offender; and to provide the supervising probation officer with copies of his telephone bills, all credit card statements/receipts, and any other financial information requested. Other terms and conditions of the sentence appear in the judgment.

    Dated at Milwaukee, Wisconsin, this 23rd day of November, 2009.

    /s Lynn Adelman

    _____
    LYNN ADELMAN
    District Judge